**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19 CR 582 |
| | ) | |
| DAVID IZSAK | ) | Hon. Manish S. Shah |
| | ) | |

**DEFENDANT'S CONSOLIDATED MOTIONS IN LIMINE**

Now comes the Defendant, David Izsak, by and through his attorneys, Nishay K. Sanan and Cece White, and respectfully requests that this Court grant the following motions *in limine*. In support, Mr. Izsak states:

**I.   Background**

David Izsak is charged in the indictment with eleven counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of identity theft in violation of 18 U.S.C. § 1028A. ECF No. 1. The indictment alleges a scheme to defraud a financial institution taking place from 2005-2018. *Id.* at ¶ 2. According to the indictment, Mr. Izsak knowingly executed a single continuing scheme to defraud a financial institution by various means, which changed for each transaction, but involved on different instances: 2 parcels of real property, 3 vehicles, 1 boat, 4 credit cards, 1 line of credit, a business associate named Yale Schiff, five fake or stolen identities, 3 businesses with ties to Izsak, and 2 checking accounts held at unidentified financial institutions. The alleged scheme to defraud occurred over the course of 13 years, involved multiple unrelated transactions, and targeted at least 14 different named financial institutions.

While the indictment alleges that all conduct is part of one continuing scheme to defraud a financial institution, it nonetheless separates its allegations into 4 categories defined by the type of allegedly fraudulent scheme: (1) fraudulently obtained mortgage loans (*Id.* at ¶¶ 7-22); (2) fraudulently obtained vehicle loans (*Id.* at ¶¶ 23-32); (3) fraudulently obtained boat loan (Id. at ¶ 33); and (4) fraudulently obtained credit card accounts and lines of credit. *Id.* at ¶¶ 34-41. Within each of these sections, the government alleges multiple

1

transactions that take place on different dates, involve different individuals, properties, or entities, utilize different methods, and target different financial institutions. Each of the four sections are summarized below.

    a. **Mortgage Loan Schemes**

The first section in the indictment describes a series of loans and home equity lines of credit (HELOCs) allegedly obtained by fraud from 6 different financial institutions in individual transactions taking place from 2005-2009. *Id.* at ¶¶ 7-22. The collateral securing the loans involved in each transaction allegedly included 1 of 2 properties owned by Mr. Izsak – the Grand Avenue Property and the Race Street Property.

The government alleges a scheme to defraud Chase Bank beginning in November 2005 in which Mr. Izsak allegedly obtained a HELOC from Chase Bank using the Grand Avenue Property "as collateral and by submitting false loan application information including false employment and income information." *Id.* at ¶ 18. The government further alleges acts in furtherance of this scheme to defraud Chase Bank, including filing releases with the Cook County Recorder of Deeds, making payments to Chase Bank, attempting to pay with a fake check, representing that he had made a payment while concealing that he had used a fake check, and selling the property. *Id.* at ¶¶ 19-22.

The government alleges a scheme to defraud BMO Harris taking place in December 2005 in which Mr. Izsak allegedly obtained a HELOC secured by the Race Street Property. *Id.* at ¶ 8. The government further alleges acts in furtherance of this scheme to defraud BMO Harris, including filing releases with the Cook County Recorder of Deeds and making payments. *Id.* at ¶¶ 9-10.

The government alleges a scheme to defraud "multiple financial institutions including" ING Bank, fsb which was acquired by Capital One National Association in or around 2012 (Hereinafter ING Bank), Bank of America, (hereinafter BOA), and Washington Mutual Bank which was acquired by Chase Bank in or around 2008 (hereinafter WAMU). *Id.* at ¶ 12. These schemes are alleged as taking place sometime between 2006-2008 in which Mr. Izsak allegedly obtained loans from the 3 named financial institutions that were secured by the Race Street Property. *Id.* It is unclear whether the phrase "multiple financial institutions including…," intends to allege that additional unnamed financial institutions provided loans secured by the Race Street Property over this span of time. *Id.* The government further alleges acts taking place between 2007-2009 in

furtherance of the schemes to defraud relating to "multiple financial institutions including ING Bank, BOA, and WAMU," *Id.* These allegations include filing releases with the Cook County Recorder of Deeds and paying the financial institutions. *Id.* at ¶ 13. It is not stated when each alleged act took place or whether each alleged act was taken in the same manner as to each of the loans obtained from the 3 named financial institutions, or others.

The government alleges a scheme to defraud Fifth Third Bank beginning in December 2009 in which Mr. Izsak "fraudulently obtained and subsequently received advances on, a HELOC from Fifth Third using the Race Street Property as collateral and by submitting false loan application information, including false employment and income information, a false form W2, false tax returns, false statements that the Race Street property had no other liens and its title was free and clear, and false statements that loans secured by the Race Street Property were instead secured by other properties." *Id.* at ¶ 14. The government further alleges acts in furtherance of this scheme to defraud Fifth Third Bank, including filing releases with the Cook County Recorder of Deeds, continuing to pay, and testifying in a proceeding before the Illinois Department of Financial and Professional Regulation. *Id.* at ¶¶ 15-17.

b.  **Vehicle Loan Schemes**

The next section in the indictment relates to 4 individual vehicle loans from 4 different financial institutions taking place in separate transactions in 2010, 2014, 2015, and 2016. *Id.* at ¶¶ 23-32.

The government alleges a scheme to defraud BOA taking place in October 2010 in which Mr. Izsak obtained a loan for the purchase of a 2011 Grand Cherokee, secured by a lien on the vehicle, in his own name. *Id.* at ¶ 25. The government alleges that in furtherance, Mr. Izsak caused a letter to be sent to the Illinois Secretary of State stating that the loan was paid in full. *Id.*

The government alleges a scheme to defraud RBS Citizens National Association (hereinafter RBS) taking place in May 2014 in which Mr. Izsak used a fake identity, the David Izsak Fake Identity, to obtain a loan to purchase a 2014 Jeep Wrangler, secured by a lien on the vehicle. *Id.* at ¶ 26.

The government alleges a scheme to defraud PenFed taking place in March 2015 in which Mr. Izsak used a stolen identity, the L.I. Stolen Identity, to obtain a loan on behalf of L.I. to purchase a 2014 Jeep Wrangler,

secured by a lien on the vehicle. *Id.* at ¶ 28. The government alleges acts in furtherance of this scheme including using a stolen identity, representing to PenFed that a business called Premier Assets owed the vehicle, providing PenFed with a fake Illinois Certificate of Title showing no lienholder, receiving proceeds from the sale of the vehicle, and transferring title of the vehicle. *Id.* at ¶¶ 28-30.

The government alleges a scheme to defraud taking place in September 2016 in which Mr. Izsak used a fake identity, the David Izsak Fake Identity, to obtain a loan from Ally Bank to purchase a 2016 Jeep Wrangler, secured by a lien on the vehicle. *Id.* at ¶ 31. The government alleges acts in furtherance of this scheme including applying for new title to the Wisconsin Secretary of State and submitting a fake Illinois Certificate of Title. *Id.* at ¶32.

    **c. Boat Loan Scheme**

The next section in the indictment relates to a single loan application for the purchase of a boat. *Id.* at ¶ 33. Specifically, the government alleges a scheme to defraud CGI Finance taking place in April 2011 in which Mr. Izsak obtained a loan to fund the purchase by submitting a false loan application. *Id.*

    **d. Credit Schemes**

The final section of the indictment relates to individual credit card applications submitted to 4 different financial institutions in separate transactions in 2012, 2013, 2014, and 2018. *Id.* at ¶¶ 34-38, 40-41. It further contains an allegation relating to a line of credit obtained in 2014. *Id.* at ¶ 39.

The government alleges a scheme to defraud Barclays taking place in September 2012 in which Mr. Izsak, using the David Izsak Fake Identity, obtained a MasterCard black credit card. *Id.* at ¶ 35.

The government alleges a scheme to defraud PenFed taking place in June 2013 in which Mr. Izsak, using the David Izsak Fake Identity, obtained a Visa credit card. *Id.* at ¶ 36. The government alleges acts in furtherance of this scheme to defraud PenFed including incurring charges from "Synergy Corp. a company owned by Schiff, with the payments to Synergy deposited into a Citibank account held and controlled by Schiff in the name of the Jeff Kaplan Fake Identity, the proceeds of which Schiff used to purchase a cashier's check payable to Izsak which was deposited into Izsak's bank account." *Id.* at ¶ 37.

4

The government alleges a scheme to defraud Chase Bank taking place in October 2014 in which Mr. Izsak, using the L.I. stolen identity, obtained a MileagePlus credit card account. *Id.* at ¶ 38. The government further alleges acts in furtherance of this scheme including that Mr. Izsak used this credit card to make a payment on the PenFed Visa credit card and that payments made towards the MileagePlus credit card "were made from L.I.'s bank account funded primarily by her monthly Social Security benefits." *Id.*

The government alleges a scheme to defraud PenFed taking place in December 2014 in which Mr. Izsak, using the L.I. Stolen Identity, obtained a line of credit. *Id.* at ¶39. The government further alleges that "most of the funds were transferred to a checking account controlled by Schiff in the name of the Sam Rosen Fake Identity, with payments on the line of credit made from L.I.'s bank account funded primarily by her Social Security benefits, and from checking accounts in the names of the Sam Rosen Fake Identity and the Jeff Kaplan Fake Identity, respectively." *Id.*

The government alleges a scheme to defraud TD Bank taking place in February 2018 in which Mr. Izsak, using the J.G. Stolen Identity, obtained or caused to be obtained from TD Bank, a Nordstrom credit card account, which Izsak and Schiff both used. *Id.* at ¶¶ 40. There is then an allegation that Mr. Izsak "misrepresented, concealed, and hid, or caused to be misrepresented, concealed and hidden, the existence, purposes, and acts done in furtherance of the scheme." *Id.* at ¶41.

 e. **Individual Counts**

Counts 1-11 each allege a violation of 18 U.S.C. § 1344, stating that Mr. Izsak knowingly executed and attempted to execute the scheme to defraud a financial institution described above. *Id.* at 13-23. The allegations specific to each count of bank fraud are as follows:

5

| Count | Date | Specific Allegation |
|---|---|---|
| 1 | 12/31/2009 | "by causing Fifth Third to issue proceeds to Izsak in the amount of approximately $100,000 from the HELOC secured by the Race Street Property." |
| 2 | 01/13/2010 | "by causing Fifth Third to issue proceeds to Izsak in the amount of approximately $300,000 from the HELOC secured by the Race Street Property." |
| 3 | 06/10/2010 | "by filing or causing to be filed with the Cook County Recorder of Deeds a false release of the lien held by Fifth Third on the Race Street Property to secure the HELOC proceeds issued to Izsak." |
| 4 | 11/22/2010 | "by filing or causing to be filed with the Cook County Recorder of Deeds a false release of the lien held by Chase Bank on the Grand Ave Property to secure the HELOC proceeds issued to Izsak." |
| 5 | 12/31/2010 | "by causing BMO Harris to issue proceeds to Izsak in the amount of approximately $1,000 from the HELOC secured by the Race Street Property." |
| 6 | 04/05/2011 | "by causing CGI Finance to issue loan proceeds to Izsak in the amount of $360,000 for the purchase of a yacht known as Flying Lady." |
| 7 | 09/23/2012 | "by causing Barclays to open a MasterCard Black credit card account ending in number 3730, with subsequent account numbers 6992 and 6410, in the name of the David Izsak Fake Identity." |
| 8 | 06/03/2013 | "by causing PenFed to open a Visa credit card in the name of the David Izsak Fake Identity." |
| 9 | 05/15/2014 | "by causing RBS to issue loan proceeds to the David Izsak Fake Identity in the amount of approximately $31,690 for the purchase of a 2014 Jeep Wrangler" |
| 10 | 03/23/2015 | "by causing PenFed to issue loan proceeds purportedly to L.I. in the amount of approximately $46,300 for the purchase of a 2014 Jeep Wrangler" |
| 11 | 02/14/2018 | "by causing TD Bank to open a Nordstrom credit card account in the name of the J.G. Stolen Identity." |

Finally, in Count 12, the government alleges a violation of 18 U.S.C. § 1028A, stating that Mr. Izsak used the identification of J.G., without lawful authority, during and in relation to, the bank fraud charged in Count 11. *Id.* at 24.

## II. Motions in Limine

### A. Motion to Clarify or Limit the Government's Ability to Argue a Theory of a Scheme to Defraud Other Than That Contained in its Indictment

Mr. Izsak previously filed a Motion to Dismiss arguing, among other things, that the indictment alleges multiple separate schemes with significant differences between them, as opposed to one continuous course of conduct. *See* Defendant's Memorandum in Support of Motion to Dismiss attached as **Exhibit A.** The Defendant argued that the indictment was improperly joined and duplicitous. Further, the Defendant's motion raised evidentiary concerns, such as the difficulty in drafting comprehensible jury instructions on such a complicated thirteen-year scheme involving at

6

least fourteen unrelated victims, and the statute of limitations issues which the government avoided by alleging that transactions taking place from 2005-2008 were a part of the same scheme as transactions taking place ten years later involving different means and different victims. ECF No. 61. The motion was fully briefed. ECF Nos. 61, 69, 75. On August 12, 2022, the motion was denied by written order. See Court's Order attached as **Exhibit B.**

While his motion to dismiss the indictment was denied, Mr. Izsak brings the instant motion *in limine* to clarify what evidence the government must prove as to its scheme to defraud and to limit the government's ability to argue a narrower theory of a scheme to defraud than that contained in its indictment. In denying the motion to dismiss, the Court ruled that "the twelve-count indictment alleges that Defendant engaged in a single, overarching scheme to defraud financial institutions from 2005 to 2018…." **Exhibit B** at 1. This continuous thirteen-year scheme is the scheme to defraud alleged in full in each count of the indictment. *See* ECF No. 1. Thus, the government must prove that a single connected scheme to defraud existed from 2005-2018 to prove any count of the indictment.

The concern is that the government will instead attempt to proceed on a subset of its allegations which could result in a variance. Under the Fifth Amendment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960). The Fifth Amendment is violated if there are differences between the government's case in the indictment and the government's case at trial that results in prejudice to the defendant. *United States v. Heon Seok Lee*, 937 F.3d 797, 806 (7th Cir. 2019). Variance refers to situations where the government's trial evidence "proves facts materially different than those alleged in the indictment." *Id.* (citing *United States v. Ajayi*, 808 F.3d 1113, 1125 (7th Cir. 2015)). Variance does not always result in error because "a prosecutor may elect to proceed on a subset of the allegations in the indictment, proving a conspiracy smaller than the one alleged." *United States v.*

7

*Bustamante*, 493 F.3d 879, 885 (7th Cir. 2007). However, the government still must charge in the indictment what it intends to prove at trial. *United States v. White*, 737 F.3d 1121, 1139 (7th Cir. 2013). Thus, even if the crime itself remains consistent in the indictment and in the government's evidence, it is a problem if the government materially alters the factual underpinnings of the elements of the charge in its indictment. *Heon Seok Lee*, 937 F.3d at 807 (citing *United States v. Cina*, 699 F.2d 853, 857-58 (7th Cir. 1983)).

Here, if the government elects to proceed on a subset of its allegations, that will materially alter the factual underpinnings of the elements of the charge and will result in prejudice to the Defendant. The elements of bank fraud are: (1) there was a scheme to defraud a specified financial institution; (2) the defendant knowingly carried out the scheme; (3) the defendant acted with the intent to defraud the specified financial institution; (4) the scheme involved a materially false or fraudulent pretense, representation, or promise; and, (5) at the time of the charged offense the deposits of the financial institution were insured by the Federal Deposit Insurance Corporation (FDIC). *See* 7th Circuit Pattern Jury Instructions (2022 ed.) at 635. *See* generally *Loughrin v. United States*, 573 U.S. 351 (2014). As the Court's ruling made clear, the scheme to defraud that the government alleged in each count is one continuous thirteen-year scheme to defraud fourteen different financial institutions. *See* **Exhibit B.** The government must prove at trial the scheme it charged in the indictment. Allowing the government to move forward on a subset would materially alter the required element that there was a connected scheme to defraud fourteen financial institutions, as alleged in each count.

The specific prejudice that would result from this variance would depend on what allegations the government moved forward on. For example, if the government's focus at trial was on the credit card applications alleged in Counts 7, 8 and 11, the only financial institutions at issue would be Barclay's, PenFed, and TD Bank and the only years at issue would be 2013-2018. ECF No. 1 at 19-20; 23. However, the government intends to introduce evidence of transactions involving eleven

other financial institutions and transactions occurring from 2005-2012 that have nothing in common with the credit card applications at issue in Counts 7, 8 and 11. If Counts 7, 8, and 11 had been charged as a separate scheme to defraud, such evidence would likely be barred under 404(b) as its only purpose would be to show that Mr. Izsak has a propensity to defraud banks. *See* Fed. R. of Evid. 404(b). Because the government charged one continuous scheme, the government can introduce *all* evidence of *all* transactions over a 13-year period between Mr. Izsak and any of the 14 financial institutions as direct evidence of the scheme, not propensity evidence. However, if the government is allowed to proceed on a subset, proving only certain parts of its alleged scheme, such evidence would be extremely prejudicial.

Further, if the government proceeds on a subset, it creates a risk of confusion and that the jury will convict without unanimity. For example, if the jury found that one of the financial institutions was not insured by the FDIC, the jury may believe that it can still find the Defendant guilty because one of the other 14 financial institutions involved in the same scheme were insured with the FDIC. If the jury finds that Mr. Izsak never made a false representation to TD Bank in 2018 or that he never used the stolen identity, the jury may believe that it can still convict on Count 11 because they did find a false representation in the HELOC application that was submitted to BMO Harris in 2010, as alleged in Count 5. ECF No. 1 at 23, 17.

There are similar concerns associated with proceeding on any subset of allegations in the indictment. If the jury finds that Mr. Izsak committed bank fraud in June 2013 by causing PenFed to open a credit card in the name of a fake identity, as alleged in Count 8, (*Id.* at 20); that does not prove that Mr. Izsak committed bank fraud in December 2009 by causing Fifth Third to issue proceeds from a HELOC secured by property, as alleged in Count 1. *Id.* at 13. The transaction alleged in Count 1 has a different victim, takes place 4 years prior to the transaction in Count 8, involves a credit card as opposed to a loan secured by property, and does not involve the use of a

9

fake or stolen identity. If the government moves forward on a subset, the defendant will be severely prejudiced by the evidence unrelated to that subset and the high risk of confusion and a lack of unanimity among jurors.

In sum, the government must prove some kind of connection between the separate transactions that it alleged as one continuous scheme. Allowing the government to proceed on a theory other than that contained in its indictment is likely to result in a prejudicial variance in violation of Mr. Izsak's Fifth Amendment rights. Thus, to protect from the possibility of a variance, the defendant respectfully requests that the Court enter an order barring the government from proceeding on a subset. Alternatively, should the Court allow the government to proceed on a subset, Defendant requests that the Court order the government to provide notice to the defense in advance so that the specific evidentiary and jury instruction issues that may result can be determined prior to trial.

### B. Motion to Bar 404(b) Evidence

The Defendant seeks to bar the admission of any evidence of other crimes, wrongs, or acts pursuant to Federal Rule of Evidence 404(b) due to lack of reasonable notice. Pursuant to the Rule, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *Id.* at 404(b)(2). In a criminal case, the prosecutor must:

> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> (C) do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

*Id.* at 404(b)(3).

The government has not provided, in writing or otherwise, notice of its intent to introduce any 404(b) evidence nor has the government articulated the permitted purpose for which it intends to offer such evidence. For this reason, the Defendant respectfully requests that this Court bar the government from introducing any such evidence at trial.

### III. Conclusion

For the above reasons, the Defendant, David Izsak, respectfully requests that this Court enter an order granting his motions *in limine*.

Respectfully submitted,

*/s/ Nishay K. Sanan*
nsanan@aol.com

*/s/ Cece White*
cece@sananlaw.com

Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111