**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19 CR 582 |
| | ) | |
| DAVID IZSAK | ) | Hon. Judge Norgle |
| | ) | |

**DEFENDANT DAVID IZSAK'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTIONS TO DISMISS THE INDICTMENT**
**OR TO SEVER IN THE ALTERNATIVE**

*/s/ Nishay K. Sanan*
nsanan@aol.com

*/s/ Cece White*
cece@sananlaw.com

Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111

1

8

# Table of Contents

I.   Summary of the Indictment ........................................................................ 4
  a.  Mortgage Loan Schemes ........................................................................ 5
  b.  Vehicle Loan Schemes ........................................................................... 7
  c.  Boat Loan Scheme .................................................................................. 8
  d.  Credit Schemes ...................................................................................... 8
  e.  Individual Counts ................................................................................... 9
II.  Argument ................................................................................................ 10
  a.  All Counts of the Indictment Fail to Specify the Section ..................... 10
  b.  Counts 1-11 Fail to Allege a Specific Intent to Defraud a Financial Institution ..................... 12
  c.  Count 6 Fails to Allege the Involvement of a "Financial Institution" ......... 13
  d.  Counts 1-11 are Prejudicially Duplicitous ........................................... 13
    i.   Counts 1-11 Each Allege Multiple Unrelated Schemes, not a Continuing Course of Conduct ........ 14
    ii.  The Duplicity in Each Count Prejudices the Defendant ..................... 17
  e.  Counts 3 and 4 Fail to Allege an Execution and are Otherwise Barred by the Statute of Limitations ........ 19
  f.  Motion to Sever .................................................................................... 22
    i.   The Counts are Not Part of the Same Act or Transaction ................... 22
    ii.  The Counts are Not Part of a Common Scheme or Plan ..................... 23
    iii. The Counts are Not of the Same or Similar Character ...................... 23
    iv.  The Counts Must be Severed Under Rule 14 to Prevent Undue Prejudice ......... 24
III. Conclusion ............................................................................................... 25

# Table of Authorities

**Cases**

*Loughrin v. United States*, 573 U.S. 351 (2014) ................................................. 11, 12
*Toussie v. United States*, 397 U.S. 112 (1970) ................................................... 19, 20
*United States v. Alsobrook*, 620 F.2d 128 (6th Cir. 1980) ................................. 17
*United States v. Anderson*, 188 F.3d 886 (7th Cir. 1999) ........................... 19, 20, 21
*United States v. Berardi*, 675 F.2d 894 (7th Cir. 1982). .................... 13, 14, 15, 17
*United States v. Buchmeier*, 225 F.3d 415 (7th Cir. 2001) ............................... 13
*United States v. Freland*, 141 F.3d 1223 (7th Cir. 1998) .................................. 22
*United States v. Longfellow,* 43 F.3d 318 (7th Cir. 1994) ............................ 14, 20
*United States v. Miller*, 883 F.3d 998 (7th Cir. 2018). ..................................... 13
*United States v. Molinaro*, 11 F.3d 853 (9th Cir. 1993) .................................... 20
*United States v. Steurer*, 942 F. Supp. 1183 (N.D. Ill. 1996) ........................... 17

*United States v. Tanner*, 471 F. 2d 128 (7th Cir. 1972) ............................................................14
*United States v. Turner*, 93 F.3d 276 (7th Cir. 1996). ...........................................................23
*United States v. White*, 610 F.3d 956 (7th Cir. 2010) ........................................................ 10, 11
*United States v. Woody*, 55 F.3d 1257 (7th Cir. 1995). ..........................................................23
*United States v. Zeidman*, 540 F.2d 314 (1967) ....................................................................14

**Statutes**

18 U.S.C. § 1028A. ................................................................................................... 4, 10, 11
18 U.S.C. § 1344 ......................................................................................................... passim
18 U.S.C. § 20. ..................................................................................................................13
18 U.S.C. § 3293 ...............................................................................................................19

**Other Authorities**

7th Circuit Pattern Jury Instructions (2020 ed.) ...................................................... 11, 12, 15

**Rules**

Fed. R. Crim. P. 8(a). .......................................................................................................22
Fed. R. Crim. Pro. 12(b)(3)(B)(v) ....................................................................................10
Fed. R. Crim. Pro. 14 .......................................................................................................25
Fed. R. Crim. Pro. 7(c)(1) ...............................................................................................10
Fed. R. of Evid. 404(b) ....................................................................................................19

# INTRODUCTION

The Defendant, David Izsak, by and through his attorneys, Nishay K. Sanan and Cece White, submits this memorandum of law in support of his Motions to Dismiss the indictment. The following Memorandum of Law is filed in support of Mr. Izsak's contemporaneously filed Motion to Dismiss the indictment. Mr. Izsak seeks dismissal of the indictment on the following grounds: (1) Each count of the indictment fails to specify which section of the statute Mr. Izsak is charged with, (2) Counts 1-11 fail to allege a specific intent to defraud a financial institution, (3) Count 6 fails to allege the involvement of a financial institution, (4) Counts 1-11 of the indictment are prejudicially duplicitous, and (5) Counts 3-4 fail to allege an execution of a scheme to defraud and are otherwise barred by the statute of limitations. Further, should the Court deny this motion, the Defendant seeks in the alternative an order severing the counts into the groups suggested by the government's indictment.

## I. Summary of the Indictment

David Izsak is charged in the indictment with eleven counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of identity theft in violation of 18 U.S.C. § 1028A. (ECF No. 1). The indictment alleges a scheme to defraud a financial institution taking place from 2005-2018. (*Id.* at ¶ 2). According to the indictment, Mr. Izsak knowingly executed a single continuing scheme to defraud a financial institution by various means, which changed for each transaction, but involved on different instances: 2 parcels of real property, 3 vehicles, 1 boat, 4 credit cards, 1 line of credit, a business associate named Yale Schiff, five fake or stolen identities, 3 businesses with ties to Izsak, and 2 checking accounts held at unidentified financial institutions. The alleged scheme to defraud occurred over the course of 13 years, involved multiple unrelated transactions, and targeted at least 14 different named financial institutions.

4

While the government's indictment claims that all the alleged conduct is part of one continuing scheme to defraud a financial institution, it nonetheless separates its allegations into 4 categories defined by the type of allegedly fraudulent scheme: (1) fraudulently obtained mortgage loans (*Id.* at ¶¶ 7-22); (2) fraudulently obtained vehicle loans (*Id.* at ¶¶ 23-32); (3) fraudulently obtained boat loan (*Id.* at ¶ 33); and (4) fraudulently obtained credit card accounts and lines of credit (*Id.* at ¶¶ 34-41). Within each of these sections, the government alleges multiple transactions that take place on different dates, involve different individuals, properties, or entities, utilize different methods, and target different financial institutions.

### a. Mortgage Loan Schemes

The first section in the indictment describes a series of loans and home equity lines of credit (HELOCs) allegedly obtained by fraud from 6 different financial institutions in individual transactions taking place from 2005-2009. (*Id.* at ¶¶ 7-22). The collateral securing the loans involved in each transaction allegedly included 1 of 2 properties owned by Mr. Izsak – the Grand Avenue Property and the Race Street Property.

The government alleges a scheme to defraud Chase Bank beginning in November 2005 in which Mr. Izsak allegedly obtained a HELOC from Chase Bank using the Grand Avenue Property "as collateral and by submitting false loan application information including false employment and income information." (*Id.* at ¶18). The government further alleges acts in furtherance of this scheme to defraud Chase Bank, including filing releases with the Cook County Recorder of Deeds, making payments to Chase Bank, attempting to pay with a fake check, representing that he had made a payment while concealing that he had used a fake check, and selling the property. (¶19-22).

The government alleges a scheme to defraud BMO Harris taking place in December 2005 in which Mr. Izsak allegedly obtained a HELOC secured by the Race Street Property. (*Id.* at ¶ 8). The

government further alleges acts in furtherance of this scheme to defraud BMO Harris, including filing releases with the Cook County Recorder of Deeds and making payments. (*Id.* at ¶¶ 9-10)

The government alleges a scheme to defraud "multiple financial institutions including" ING Bank, (hereinafter ING Bank), FSB which was acquired by Capital One National Association in or around 2012, (hereinafter ING Bank – see note[1]), Bank of America, (hereinafter BOA), and Washington Mutual Bank which was acquired by Chase Bank in or around 2008 (hereinafter WAMU). (*Id.* at ¶ 12). These schemes are alleged as taking place sometime between 2006-2008 in which Mr. Izsak allegedly obtained loans from the 3 named financial institutions that were secured by the Race Street Property. (*Id.*). It is unclear whether the phrase "multiple financial institutions including…," intends to allege that additional unnamed financial institutions provided loans secured by the Race Street Property over this span of time. (*Id.*) The government further alleges acts taking place between 2007-2009 in furtherance of the schemes to defraud relating to "multiple financial institutions including ING Bank, BOA, and WAMU," (*Id.*) These allegations include filing releases with the Cook County Recorder of Deeds and paying the financial institutions. (*Id.* at ¶ 13) It is not stated when each alleged act took place or whether each alleged act was taken in the same manner as to each of the loans obtained from the 3 named financial institutions, or others.

The government alleges a scheme to defraud Fifth Third Bank beginning in December 2009 in which Mr. Izsak "fraudulently obtained and subsequently received advances on, a HELOC from Fifth Third using the Race Street Property as collateral and by submitting false loan application information, including false employment and income information, a false form W2, false tax returns, false statements that the Race Street property had no other liens and its title was free and clear, and false statements that loans secured by the Race Street Property were instead secured by other

---

[1] The indictment refers to ING Bank as "ING Bank" and also refers to "FSB" which was acquired by Capital One National Association in or around 2012" as "ING Bank."

properties." (*Id.* at ¶ 14). The government further alleges acts in furtherance of this scheme to defraud Fifth Third Bank, including filing releases with the Cook County Recorder of Deeds, continuing to pay, and testifying in a proceeding before the Illinois Department of Financial and Professional Regulation. (*Id.* at ¶¶ 15-17).

### b. Vehicle Loan Schemes

The next section in the indictment relates to 4 individual vehicle loans from 4 different financial institutions taking place in separate transactions in 2010, 2014, 2015, and 2016. (*Id.* at ¶¶ 23-32). The government alleges a scheme to defraud BOA taking place in October 2010 in which Mr. Izsak obtained a loan for the purchase of a 2011 Grand Cherokee, secured by a lien on the vehicle, in his own name. (*Id.* at ¶ 25). The government alleges that in furtherance, Mr. Izsak caused a letter to be sent to the Illinois Secretary of State stating that the loan was paid in full. (*Id.*). The government alleges a scheme to defraud RBS Citizens National Association (hereinafter RBS) taking place in May 2014 in which Mr. Izsak used a fake identity, the David Izsak Fake Identity, to obtain a loan to purchase a 2014 Jeep Wrangler, secured by a lien on the vehicle. (*Id.* at ¶ 26).

The government alleges a scheme to defraud PenFed taking place in March 2015 in which Mr. Izsak used a stolen identity, the L.I. Stolen Identity, to obtain a loan on behalf of L.I. to purchase a 2014 Jeep Wrangler, secured by a lien on the vehicle. (*Id.* at ¶ 28). The government alleges acts in furtherance of this scheme including using a stolen identity, representing to PenFed that a business called Premier Assets owed the vehicle, providing PenFed with a fake Illinois Certificate of Title showing no lienholder, receiving proceeds from the sale of the vehicle, and transferring title of the vehicle. (*Id.* at ¶¶ 28-30). The government alleges a scheme to defraud taking place in September 2016 in which Mr. Izsak used a fake identity, the David Izsak Fake Identity, to obtain a loan from Ally Bank to purchase a 2016 Jeep Wrangler, secured by a lien on the vehicle. (*Id.* at ¶ 31). The

government alleges acts in furtherance of this scheme including applying for new title to the Wisconsin Secretary of State and submitting a fake Illinois Certificate of Title. (*Id.* at ¶32).

      **c.**    **Boat Loan Scheme**

The next section in the indictment relates to a single loan application for the purchase of a boat. (*Id.* at ¶ 33). Specifically, the government alleges a scheme to defraud CGI Finance taking place in April 2011 in which Mr. Izsak obtained a loan to fund the purchase by submitting a false loan application. (*Id.*)

      **d.**    **Credit Schemes**

The final section of the indictment relates to individual credit card applications submitted to 4 different financial institutions in separate transactions in 2012, 2013, 2014, and 2018. (*Id.* at ¶¶ 34-38, 40-41). It further contains an allegation relating to a line of credit obtained in 2014. (*Id.* at ¶ 39).

The government alleges a scheme to defraud Barclays taking place in September 2012 in which Mr. Izsak, using the David Izsak Fake Identity, obtained a MasterCard black credit card. (*Id.* at ¶ 35).

The government alleges a scheme to defraud PenFed taking place in June 2013 in which Mr. Izsak, using the David Izsak Fake Identity, obtained a Visa credit card. (*Id.* at ¶ 36). The government alleges acts in furtherance of this scheme to defraud PenFed including incurring charges from "Synergy Corp. a company owned by Schiff, with the payments to Synergy deposited into a Citibank account held and controlled by Schiff in the name of the Jeff Kaplan Fake Identity, the proceeds of which Schiff used to purchase a cashier's check payable to Izsak which was deposited into Izsak's bank account." (*Id.* at ¶ 37).

The government alleges a scheme to defraud Chase Bank taking place in October 2014 in which Mr. Izsak, using the L.I. stolen identity, obtained a MileagePlus credit card account. (*Id.* at ¶ 38). The government further alleges acts in furtherance of this scheme including that Mr. Izsak used this credit card to make a payment on the PenFed Visa credit card and that payments made towards

the MileagePlus credit card "were made from L.I.'s bank account funded primarily by her monthly Social Security benefits." (*Id.*)

The government alleges a scheme to defraud PenFed taking place in December 2014 in which Mr. Izsak, using the L.I. Stolen Identity, obtained a line of credit. (*Id.* at ¶39). The government further alleges that "most of the funds were transferred to a checking account controlled by Schiff in the name of the Sam Rosen Fake Identity, with payments on the line of credit made from L.I.'s bank account funded primarily by her Social Security benefits, and from checking accounts in the names of the Sam Rosen Fake Identity and the Jeff Kaplan Fake Identity, respectively." (*Id.*)

The government alleges a scheme to defraud TD Bank taking place in February 2018 in which Mr. Izsak, using the J.G. Stolen Identity, obtained or caused to be obtained from TD Bank, a Nordstrom credit card account, which Izsak and Schiff both used. (*Id.* at ¶¶ 40). There is then an allegation that Mr. Izsak "misrepresented, concealed, and hid, or caused to be misrepresented, concealed and hidden, the existence, purposes, and acts done in furtherance of the scheme." (*Id.* at ¶41).

### e. Individual Counts

Counts 1-11 each allege a violation of 18 U.S.C. § 1344, stating that Mr. Izsak knowingly executed and attempted to execute the scheme to defraud a financial institution described above. (*Id.* at 13-23). The allegations specific to each count of bank fraud are as follows:

| Count | Date | Specific Allegation |
|---|---|---|
| 1 | 12/31/2009 | "by causing Fifth Third to issue proceeds to Izsak in the amount of approximately $100,000 from the HELOC secured by the Race Street Property." |
| 2 | 01/13/2010 | "by causing Fifth Third to issue proceeds to Izsak in the amount of approximately $300,000 from the HELOC secured by the Race Street Property." |
| 3 | 06/10/2010 | "by filing or causing to be filed with the Cook County Recorder of Deeds a false release of the lien held by Fifth Third on the Race Street Property to secure the HELOC proceeds issued to Izsak." |

| 4 | 11/22/2010 | "by filing or causing to be filed with the Cook County Recorder of Deeds a false release of the lien held by Chase Bank on the Grand Ave Property to secure the HELOC proceeds issued to Izsak." |
| 5 | 12/31/2010 | "by causing BMO Harris to issue proceeds to Izsak in the amount of approximately $1,000 from the HELOC secured by the Race Street Property." |
| 6 | 04/05/2011 | "by causing CGI Finance to issue loan proceeds to Izsak in the amount of $360,000 for the purchase of a yacht known as Flying Lady." |
| 7 | 09/23/2012 | "by causing Barclays to open a MasterCard Black credit card account ending in number 3730, with subsequent account numbers 6992 and 6410, in the name of the David Izsak Fake Identity." |
| 8 | 06/03/2013 | "by causing PenFed to open a Visa credit card in the name of the David Izsak Fake Identity." |
| 9 | 05/15/2014 | "by causing RBS to issue loan proceeds to the David Izsak Fake Identity in the amount of approximately $31,690 for the purchase of a 2014 Jeep Wrangler" |
| 10 | 03/23/2015 | "by causing PenFed to issue loan proceeds purportedly to L.I. in the amount of approximately $46,300 for the purchase of a 2014 Jeep Wrangler" |
| 11 | 02/14/2018 | "by causing TD Bank to open a Nordstrom credit card account in the name of the J.G. Stolen Identity." |

Finally, in Count 12, the government alleges a violation of 18 U.S.C. § 1028A, stating that Mr. Izsak used the identification of J.G., without lawful authority, during and in relation to, the bank fraud charged in Count 11. (*Id.* at 24).

## II. Argument

A defect in the indictment must be raised by pretrial motion. Fed. R. Crim. Pro. 12(b)(3)(B)(v). Further, an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Id.* at R. 7(c)(1). The Seventh Circuit has explained that "[a]n indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). Here, there are multiple issues with the indictment as a whole and as to specific counts, each which warrant dismissal.

### a. All Counts of the Indictment Fail to Specify the Section

10

Each count of the indictment fails to include which section of the statute Mr. Izsak is charged with violating. Rule 7 states, "For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the Defendant is alleged to have violated." Fed. R. Crim Pro. 7(c)(1). Further, the test for an indictment's legal sufficiency requires that the Defendant be informed of the charges and that those charges be effectively limited to avoid a risk of double jeopardy. *White*, 610 F.3d at 958.

Here, counts 1-11 each allege a violation of § 1344 but fail to specify whether Mr. Izsak is charged with a scheme to defraud a financial institution under 18 U.S.C. § 1344(1) or with obtaining bank property by false or fraudulent pretenses under 18 U.S.C. § 1344(2). Count 12, likewise fails to specify which section of 18 U.S.C. § 1028A is alleged, but § 1028A has two sections differentiated by the underlying offense. Thus, by charging §1028A in relation to a felony falling within §1028A the intention of the government's indictment becomes clear. However, the same is not true for counts 1-11. The two sections in the bank fraud statute use similar language and prohibit similar conduct, but they are separate offenses requiring different elements be proven beyond a reasonable doubt. *Compare* 7th Circuit Pattern Jury Instructions (2020 ed.) (hereinafter 7th Cir. J.I.), at 560 *with Id.* at 564. *See also Loughrin v. United States*, 573 U.S. 351, 358 n. 4 (2014) (explaining that the overlap between the two clauses is substantial). Here, the indictment could conceivably intend to allege either section of § 1344, preventing the Defendant from adequately preparing his defense and raising concerns over his ability to plead a judgment here as a bar to future prosecution. Further, this raises a concern as to which charges the Grand Jury intended to indict Mr. Izsak on, violations of § 1344(1) or violations of §1344(2).

The Defendant assumes for the purposes of this motion that the government intended to charge violations of 18 U.S.C. § 1344(1). While the indictment includes language from both sections, it alleges that Defendant "participated in a scheme to defraud a financial institution," which is

typically the language of 18 U.S.C. § 1344(1). (ECF No. 1, ¶ 2). Further, it is the Defendant's position that the indictment would fail under either theory for the reasons raised in pretrial motions. However, by failing to provide the citation for the provision of law that the Defendant is alleged to have violated, the government has not fulfilled the requirements in adequately indicting the Defendant and its indictment should be dismissed.

>   **b.      Counts 1-11 Fail to Allege a Specific Intent to Defraud a Financial Institution**

Counts 1-11 of the indictment fail to state an offense in that the indictment fails to allege that the Defendant acted with a specific intent to defraud a financial institution. The elements of bank fraud are: (1) there was a scheme to defraud a specified financial institution; (2) the defendant knowingly carried out the scheme; (3) the defendant acted with the intent to defraud the specified financial institution; (4) the scheme involved a materially false or fraudulent pretense, representation, or promise; and, (5) at the time of the charged offense the deposits of the financial institution were insured by the Federal Deposit Insurance Corporation (FDIC). *See* 7th Cir. J.I. at 560. *See also, generally, Loughrin,* 573 U.S. 351. Specific intent to defraud a financial institution is the key element that separates the two offenses described in 18 U.S.C. § 1344. As the Supreme Court put it, "the first clause of § 1344, as all agree, includes the requirement that a defendant intend to defraud a financial institution; indeed, that is §1344(1)'s whole sum and substance." *Loughrin*, 573 U.S. at 357.

Here, the indictment alleges that the Defendant knowingly participated in a scheme to defraud multiple financial institutions by means of materially false and fraudulent pretenses. (ECF No. 1, ¶ 2). However, the indictment fails to allege the key element of the offense with which Mr. Izsak is charged, namely, that Mr. Izsak acted with the specific intent to defraud a financial institution. There is no allegation as to Mr. Izsak's specific intent to defraud any financial institution, let alone each of the 14 financial institutions that are named as victims. The indictment fails to allege

that Mr. Izsak acted with intent at all. As such, counts 1-11 fail to state an offense and must be dismissed.

### c.    Count 6 Fails to Allege the Involvement of a "Financial Institution"

Count 6 of the indictment fails to allege the involvement of a financial institution. One required element of bank fraud is that the financial institution involved must qualify under the definition of 18 U.S.C. § 20. Most commonly, the financial institution involved in a bank fraud prosecution meets this definition because they are insured by the FDIC. *Id.* at § 20 (1). Count 6 alleges that Mr. Izsak caused "CGI Finance to issue loan proceeds," in connection to a boat. (ECF No. 1 at 18). However, the indictment fails to allege that CGI Finance was insured by the FDIC. The indictment states, "CGI Finance was a North American subsidiary and branch of Societe Generale, a foreign bank." (*Id.* at ¶ 1-j). This allegation fails to allege that CGI Finance meets the definition of a "financial institution." Thus, count 6 of the indictment fails to state an offense and must be dismissed.

### d.    Counts 1-11 are Prejudicially Duplicitous

Counts 1-11 are prejudicially duplicitous. A count is duplicitous if it "charges two or more distinct offenses within a single count." *United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982). The overall vice of duplicity is that the jury cannot render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both. *United States v. Buchmeier*, 225 F.3d 415, 425 (7th Cir. 2001). In addition to jury confusion, a duplicitous indictment may expose a defendant to other adverse effects including improper notice of the charges again him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, and in exposure to double jeopardy. *Id.*

Because Congress determines the intended unit of prosecution for criminal statutes, whether an offense is impermissibly duplicitous depends on the language of the specific statute at issue.

13

*United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018). Here, the statue at issue is bank fraud which is "the knowing execution or attempt to execute a scheme or artifice to defraud a financial institution." 18 U.S.C. § 1344(1). The statute is "meant to punish each 'execution' of the scheme to defraud, and not each act in furtherance of the scheme to defraud. *United States v. Longfellow,* 43 F.3d 318, 324 (7th Cir. 1994). Thus, an indictment charging bank fraud would properly allege a scheme to defraud a financial institution, and each count of the indictment would be an execution of that scheme.

Further, an indictment is not duplicitous if it charges a single offense carried out through different means. *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir. 1982). Where the indictment, "fairly interpreted," alleges a "continuing course of conduct, during a discrete period of time," the indictment is not prejudicially duplicitous." *Id.* at 898. However, the line between multiple offenses and multiple means to accomplish a single continuing offense can be difficult to draw. See e.g., *United States v. Tanner*, 471 F. 2d 128 (7th Cir. 1972). That is because, generally, schemes to defraud are "multi-faceted and therefore the various means used in committing the offense may be joined without duplicity." *United States v. Zeidman*, 540 F.2d 314, 318 (1967). In determining whether several acts constitute a single scheme, the Court may consider whether the transactions have a "sufficiently close nexus with one another." *Id.* at 317. This analysis involves the court's consideration of the commonalities and differences between the transactions as well as the alleged purpose of the scheme, its victim, the methods by which it was accomplished, and the parties involved. *See e.g. Id.;, Berardi*, 675 F.2d at 894.

### i. Counts 1-11 Each Allege Multiple Unrelated Schemes, not a Continuing Course of Conduct

Counts 1-11 are duplicitous in that they each allege a single execution of one scheme to defraud one financial institution, while simultaneously alleging multiple unrelated schemes to defraud other financial institutions. 18 U.S.C. § 1344 is written in the singular, punishing "a scheme"

14

to "defraud a financial institution," suggesting that a scheme in this section should be defined by the financial institution that is its target. *See* 18 U.S.C. §1344(1) (emphasis added). Further, "a scheme to defraud a financial institution" is defined as, "a scheme with the purpose to deceive or cheat a financial institution, to obtain money or property belonging to a financial institution, or to cause the potential loss of money or property belonging to a financial institution." 7th Cir. J.I. at 562.

Here, in counts 1-11, the government alleges that this purported scheme to defraud has, as its target, a minimum of 14 different named financial institutions. Each count then accuses the defendant of scheming to obtain different property from only 1 of those 14 financial institutions, such as obtaining a HELOC in count 1 from Fifth Third Bank or obtaining a Nordstrom credit card from TD Bank in count 11. (*Compare* ECF No. 1 at 13 to *Id.* at 23). The scheme to defraud a financial institution in count 1 is a scheme to obtain the property of Fifth Bank; not a scheme to obtain the property of TD Bank, like that alleged in count 11. (*Id.*) Thus, the allegations in count 1 and count 11 must be two different schemes to defraud, under both the language of the statute itself, and the widely accepted definition of a scheme to defraud a financial institution.

While Courts have found that there can be more than 1 financial institution involved in an overarching scheme to defraud, there must be commonalities between them such that the sum of the allegations creates one "continuing course of conduct, during a discrete period of time." *Berardi*, 675 F.2d at 898. Here, there is no "discrete period of time," there is a 13-year scheme alleged. Further, each count describes multiple separate schemes to defraud multiple unrelated financial institutions, carried out in separate transactions, with different actors, at separate times, using different methods in each instance.

For example, count 9 alleges that on May 15, 2014, Mr. Izsak used a fake identity, "the David Izsak Fake Identity," to obtain a loan from RBS to purchase a vehicle. (ECF No. 1 at 21). It alleges that he did so as a part of a single continuing scheme to defraud a financial institution from

2005-2018. (*Id.* at ¶26). However, the victim in this count, RBS, is not involved in any other transaction. Further, the other allegations in the indictment take place years before, as well as years after, this transaction. Other schemes alleged in the indictment, such as those relating to HELOCs, do not involve the use of a fake or stolen identity at all (*See e,g.*, *Id.* at ¶¶ 8-16). Other schemes alleged in the indictment do not relate to the same type of transaction, an application for a loan to purchase an asset. (*Id. See also, Id.* at ¶¶ 34-36). Even the other allegations that have the most in common with that of count 9, other loans to obtain a vehicle, have major differences – they all take place in separate transactions on separate dates and involve the submission of separate applications containing different information, to different, unrelated victims. (*Id.* at ¶¶ 23-32).

In count 1, the government alleges a scheme to defraud Fifth Third Bank in 2009 in which Mr. Izsak applied to obtain a HELOC on the Race Street Property. (*Id.* at 13). According to the indictment, this is a part of the same continuing scheme to defraud a financial institution as that alleged in all counts, including count 9. However, this transaction has a different victim, takes place 5 years prior to the transaction in count 9, does not involve a loan to obtain an asset, does not involve a loan to obtain a vehicle, and does not involve the use of the David Izsak fake identity, nor the use of any fake or stolen identity. (*Id.*) There is no connection between count 1 and count 9, yet, according to the government, they are one continuous course of conduct.

The same lack of commonalities is true across the indictment's allegations. For example, the indictment alleges the involvement of Yale Schiff in the scheme to defraud. (*Id.* at ¶1-d). However, his only involvement is in connection to the use of certain credit cards after they were allegedly obtained by fraud. (*Id.* at ¶¶ 35, 37, 39, 40). There are no allegations tying him to the HELOCs, the vehicle loan applications, or the boat loan application. His earliest involvement appears to be in 2014, but the government claims this is a single continuing scheme from 2005-2018. The same is true of the "J.G. Stolen Identity," that was allegedly involved in the scheme to defraud. (*Id.* at ¶ 1-i).

This identity is not involved in a single allegation until the final year of this purported scheme to defraud a financial institution and even then, is involved only in relation to one financial institution (out of 14) and one credit account (out of 5), with no connection to anything occurring prior to 2018. (*Id.* at ¶ 40).

In sum, there are multiple, unrelated schemes to defraud a financial institution alleged in counts 1-11 which have no connection to each other, nor any connection to the executions charged as counts. The conduct alleged does not take place within a discrete period of time nor can it be fairly interpreted as a continuing course of conduct. As such, each count of the indictment alleges multiple executions of a scheme to defraud a financial institution in counts 1-11.

### ii. The Duplicity in Each Count Prejudices the Defendant

Mr. Izsak would be prejudiced by prosecution on the duplicitous counts of the indictment and thus, dismissal of these counts is proper. "The overall vice of duplicity is that the jury cannot in a general verdict render its findings on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *United States v. Buchmeier*, F.3d 415, 425 (7th Cir. 2001). Even though the initial discretion of how to charge an offense lies with the prosecution, the indictment "must eventually be measured in terms of whether it exposes a defendant to any of the inherent dangers of a duplicitous indictment." *United States v. Steurer*, 942 F. Supp. 1183, 1187 (N.D. Ill. 1996) citing *United States v. Alsobrook*, 620 F.2d 128, 142 (6th Cir. 1980). Those dangers include the possibility that the defendant may not be adequately notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings at trial, and that he may be convicted by a less than unanimous verdict." *United States v. Berardi*, 675 F.2d 894, 899 (7th Cir. 1982).

Here, Mr. Izsak will be prejudiced by evidentiary rulings and there is a high risk that he may be convicted by a less than unanimous verdict. The prejudice involved is best illustrated by the

difficulty that would be involved in fashioning proper jury instructions in this case. For example, count 11 charges the Defendant with an execution of the scheme on February 14, 2018, in relation to "causing TD Bank to open a Nordstrom Credit Card in the name of the J.G. Stolen Identity." (ECF No. 1 at 23). Based on the pattern instructions, the jury would be instructed that to convict the Defendant of the alleged bank fraud execution taking place on February 14, 2018, it must find:

> (1) that from 2005-2018, there was a scheme to defraud Ally Bank, BOA, Barclay, BMO Harris, Fifth Third, ING Bank, fsb later acquired by Capital One Bank, Chase, RBS, TD Bank, United Bank, WAMU, CGI Finance, and PenFed
> (2) that Mr. Izsak knowingly carried out that scheme,
> (3) that Mr. Izsak acted with the intent to defraud Ally Bank, BOA, Barclay, BMO Harris, Fifth Third, ING Bank, fsb late acquired by Capital One Bank, Chase, RBS, TD Bank, United Bank, WAMU, CGI Finance, and PenFed,
> (4) that the scheme involved a materially false or fraudulent pretense, and
> (5) that at the time of the charged offenses, Ally Bank, BOA, Barclay, BMO Harris, Fifth Third, ING Bank, fsb late acquired by Capital One Bank, Chase, RBS, TD Bank, United Bank, WAMU, CGI Finance, and PenFed were all insured by the FDIC.

This allows the jury to convict on all counts regardless of whether it unanimously finds that each of these elements have been met. For example, if the jury found that TD Bank was not insured by the FDIC in February 2018, the jury could conceivably still find the Defendant guilty of Count 11 because one of the other 14 financial institutions were insured with the FDIC. If the jury finds that Mr. Izsak never made a false representation to TD Bank, or in the application for the Nordstrom credit card, or that he never used the stolen identity, jury may believe that it can still convict on count 11 because they did find a misrepresentation in the HELOC application that was submitted to Fifth Third Bank in 2009. The duplicity in the indictment creates a risk of confusing the jury who may ultimately convict by a less than unanimous verdict. A general verdict form would do nothing to indicate which of the many executions of separate schemes to defraud the jury found Mr. Izsak guilty of beyond a reasonable doubt. A conviction could rest "on only one of the offenses or both." *Buchmeier*, 255 F.3d at 425. As such, "the overall vice of duplicity," is present here and the indictment should be dismissed. *Id.*

Further, the indictment's duplicity is prejudicial in that it raises evidentiary issues. If Count 11 were charged as a separate scheme to defraud, with an accompanying execution, proving Count 11 would require the government to prove a scheme to defraud TD Bank, an intent to defraud TD Bank, and a material misrepresentation in relation to that particular scheme. However, as it is charged now, this execution of a scheme to defraud TD Bank in 2018 relating to a credit card application may instead be proven by a misrepresentation in an application submitted to Fifth Third Bank nine years prior that related to a HELOC application and a parcel of property. If the counts were properly separated, such evidence would likely be barred under 404(b) as its only purpose would be to show that Mr. Izsak has a propensity to defraud banks. *See* Fed. R. of Evid. 404(b) By charging it in this matter, the government can instead claim that *all* evidence of *all* transactions over a 13-year period between Mr. Izsak and *any* of the 14 financial institutions is direct evidence of the scheme, not propensity evidence.

Finally, the duplicity further prejudices Mr. Izsak in that each count of the indictment alleges multiple unrelated schemes that are barred by the statute of limitations under the guise that each are a part of one continuous scheme. For example, the indictment alleges a scheme to defraud BMO Harris in 2006, separate schemes to defraud ING Bank, BOA, and WAMU in 2006-2008, and a scheme to defraud Chase Bank in 2005, none of which are accompanied by executions placing them within the statute of limitations. (*Id.* at ¶¶ 8, 12, 18).

e.    **Counts 3 and 4 Fail to Allege an Execution and are Otherwise Barred by the Statute of Limitations**

Counts 3 and 4 of the indictment do not allege an execution of a scheme to defraud and are otherwise barred by the statute of limitations. The statute of limitations for bringing an action for bank fraud is ten years. *See* 18 U.S.C. § 3293. A statute of limitations is imposed "to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *United States v. Anderson*, 188 F.3d 886, 888

19

(7th Cir. 1999) citing *Toussie v. United States*, 397 U.S. 112, 114 (1970). The United States Supreme Court "has stated on more than one occasion that criminal statutes of limitations are to be "liberally interpreted in favor of repose" so that prompt investigation of criminal activity is encouraged." *Id.*

The crime of bank fraud is complete when the defendant places the bank at a risk of financial loss, and not necessarily when the loss itself occurs. In *United States v. Longfellow*, the Court held that the bank fraud statute is meant to punish each "execution" of the scheme to defraud, and not each act in furtherance of the scheme to defraud. *Longfellow*, 43 F.3d at 323. There, the defendant made a series of fraudulent loans, but all loans had occurred more than 5 years before the defendant was indicted.[2] *Id.* at 324. The defendant had refinanced one of the loans within the statute of limitations period and the government claimed that this was an execution bringing the entire scheme within the statute of limitations. *Id.* at 322. The defendant argued that the refinancing was not an execution, but was instead, a continuation of the prior transaction. *Id.* The Court rejected this argument, finding that the refinancing was an execution because "it put the Credit Union at a separate, distinguishable financial risk from the risk it already undertook in making the original loan." *Anderson*, 188 F.3d at 891 (discussing *Longfellow*). As such, it was an execution of the same scheme to defraud the Credit Union and it brought the entire scheme within the statute of limitations.

Here, Counts 3 and 4 are barred by the statute of limitations because neither is an execution of a scheme to defraud. Each count of the indictment must be "an actual, chargeable 'execution,'" as opposed to "a simple, unindictable 'act in furtherance of the scheme.'" *Longfellow,* 43 F.3d at 323 quoting *United States v. Molinaro*, 11 F.3d 853, 859 (9th Cir. 1993). "Ultimately, the decision of whether an action is an execution of the criminal scheme will be fact intensive; there are several factors to consider, including, but not limited to, the ultimate goal of the scheme, the nature of the

---

[2] The statute of limitations for bank fraud was 5 years at the time of the ruling.

scheme, the benefits intended, the interdependence of the acts, and the number of parties involved." *Anderson,* 188 F.3d at 889. Further, the Court has held that "the execution of the fraudulent scheme is complete upon the movement of money, funds, or other assets from the financial institution." *Id.* at 891.

Here, counts 3 and 4 do not allege executions of the scheme to defraud because the acts alleged therein are not independent actions that placed the bank at "a separate, distinguishable, financial risk." Count 3 alleges that on June 23, 2010, Mr. Izsak executed the scheme to defraud a financial institution by filing with the Cook County Recorder of Deeds a false release of the lien (a public filing cannot be concealment) held by Fifth Third on the Race Street Property. (ECF No. 1 at 15). Filing a document with the recorder of deeds did not create a separate financial risk to the bank and is not an independent act of bank fraud in that it relies entirely on the bank having already been placed at risk of loss by providing the HELOC. There is no movement of money, funds, or other assets from the financial institution. This is, at most, an act in furtherance in a scheme to defraud Fifth Third Bank, which cannot be charged as an individual count. Thus, count 3 fails to state an offense and should be dismissed.

Further, there are multiple separate schemes alleged in this indictment, rendering it duplicitous, as detailed in full above. This creates an issue in that it is unclear whether the government alleges count 3 an execution of the scheme to defraud Fifth Third Bank that took place in December 2005, in which case it is barred by the statute of limitations because there is no execution within 10 years. If, in the alternative, count 3 is alleged as an execution of the scheme to defraud Fifth Third Bank that separately took place more than 4 years later and involved different methods, count 3 is multiplicitous to count 1 in that it fails to allege a separate execution and is instead an act of furtherance. Regardless, count 3 fails to allege an execution of any scheme to defraud and should be dismissed.

Count 4 similarly alleges that on November 22, 2010, Mr. Izsak executed the scheme to defraud by filing with the Cook County Recorder of Deeds a false release of the lien held by Chase Bank on the Grand Avenue Property. (ECF No. 1 at 4). This is not an execution of a scheme to defraud a financial institution in that it does not place the bank at a separate risk and it involves no movement of money, assets, or property of the bank. Count 4 is further barred by the statute of limitations in that the scheme to defraud Chase bank took place in 2005 and the indictment does not contain any allegation of an execution that would bring it within the statute of limitations. Thus, Count 4 should be dismissed.

### f.     Motion to Sever

Should the Court find that dismissal is not appropriate under any of the above grounds, the Defendant moves in the alternative to sever the counts for the purposes of trial pursuant to Federal Rules of Criminal Procedure 8 and 14. Rule 8(a) forbids joinder of multiple counts unless they (1) are "based on the same act or transaction;" (2) are "connected with or constitute parts of a common scheme or plan;" or (3) are "of the same or similar character." Fed. R. Crim. P. 8(a). Rule 8 should be broadly construed to increase judicial efficiency and to avoid costly and duplicative trials. *United States v. Freland*, 141 F.3d 1223, 1226 (7th Cir. 1998). The government splits its indictment into four sections: (1) fraudulently obtained mortgage loans (*Id.* at ¶¶ 7-22) (**Counts 1-5**); (2) fraudulently obtained vehicle loans (*Id.* at ¶¶ 23-32) (**Counts 9-10**); (3) fraudulently obtained boat loan (*Id.* at ¶ 33) (**Count 6**); and (4) fraudulently obtained credit card accounts and lines of credit (*Id.* at ¶¶ 34-41) (**Counts 7, 8, 11, 12**). Between these groups, none of the required conditions for joinder, for many of the same reasons explained in detail above. As such, the indictment is subject to dismissal for improper joinder of offenses or in the alternative, should be severed for trial into counts grouped by the type of transaction.

### i.     The Counts are Not Part of the Same Act or Transaction

None of the counts relate to the same act or transaction. Each count is a separate application submitted on a different date to a different financial institution, for a different purpose. These are separate and distinct events and thus, joinder is not proper based on each count being a part of the same act or transaction.

### ii.    The Counts are Not Part of a Common Scheme or Plan

The counts are not part of a common scheme or plan. Charges are part of the same "common scheme or plan" if they share a "logical relationship," such as where one charge serves as a "logical precursor" for the other. *United States v. Woody*, 55 F.3d 1257, 1267 (7th Cir. 1995). Here, as explained in the above discussion on duplicity, there is very little connection between the multiple schemes alleged in counts 1-11. However, the only connections that do exist, while insufficient under the law to allege a continuing course of conduct within a discrete period of time, are commonalities existing between the schemes alleged in each group defined by the government.

### iii.    The Counts are Not of the Same or Similar Character

The counts are not of the same or similar character. Charges may be of the same or similar character if they refer to the same type of offenses occurring over a relatively short period of time and the evidence as to each count overlaps *United States v. Turner*, 93 F.3d 276, 283 (7th Cir. 1996).

Here, the charges are not over a relatively short period of time. The alleged scheme takes place from 2005-2018, over a span of 13 years. As for the individual counts, the earliest in time is December 31, 2009, and the latest in time is February 14, 2018, over 8 years later. In *Turner*, the Court held that 14 months between offenses was too long to qualify as a relatively short period of time. *Id.* As such, this 8-year gap between the transactions likewise does not qualify as a "short period of time," for the purposes of joinder.

Evidentiary overlap is not a consideration when the offenses do not occur over a relatively short period of time. However, it is worth noting that there would no evidentiary overlap between

the offenses charged here. As an example, to prove count 1, the government must prove that in 2009, Mr. Izsak submitted a false loan application to Fifth Third Bank using the Race Street Property as collateral and claiming that it was unencumbered by other liens. Evidence in support may take the form of testimony from a bank representative and documents submitted to Fifth Third Bank with the application. To prove count 8, the government will have to prove that in 2013, Mr. Izsak used a fake identity in a visa credit card application to PenFed and in connection to that, he involved a business called Synergy Corp. owned by a business associate of his named Schiff, who had a fake identity that he used and a bank account in that name, which he used to purchase a cashier's check. The Fifth Third Bank representative and the Fifth Third loan application would not aid the government in proving this count. The same lack of overlap is true across the various schemes.

When charges are separated in time, charges can still be of the same or similar character if they share "categorical, not evidentiary similarities." Some individual counts have items in common. For example, Counts 1 -5 each relate to a HELOC. However, they do have stark differences such as the property to which the HELOC relates and the financial institution involved. Further, while Counts 1, 2, and 5 relate to issuing proceeds; counts 3 and 4 relate only to filing documents with a Recorder of Deeds. Further, Counts 6-12 have nothing to do with parcels of property or HELOCs. Count 6 has nothing in common with any other count. Counts 7, 8, and 11 relate to applications for credit, but they involve different financial institutions.  The only categorical similarity between these charges is that they each involve the Defendant and a financial institution. In sum, none of the required conditions allowing for joinder of offenses are met here. Thus, the counts are improperly joined.

   iv.   **The Counts Must be Severed Under Rule 14 to Prevent Undue Prejudice**

24

Rule 14 states, in relevant part, that if the joinder of offenses in an indictment "appears to prejudice a defendant or the government, the court may order separate trials of counts," or "provide any other relief that justice requires." Fed. R. Crim. Pro. 14. Here, there are individual schemes to defraud separate financial institutions alleged throughout the government's indictment. This will result in prejudice to the Defendant in that it allows the government to introduce significant evidence that suggests that Mr. Izsak has a propensity to commit bank fraud under the guise that it all relates to one single continuing scheme. Further, it allows the government to introduce evidence of schemes barred by the statute of limitations. Finally, the indictment relates to 13 years of conduct and will require extensive evidence to prove each allegation, much of which is completely unrelated to any other allegation.

The government splits its indictment into four sections: (1) fraudulently obtained mortgage loans (*Id.* at ¶¶ 7-22) (**Counts 1-5**); (2) fraudulently obtained vehicle loans (*Id.* at ¶¶ 23-32) (**Counts 9-10**); (3) fraudulently obtained boat loan (*Id.* at ¶ 33) (**Count 6**); and (4) fraudulently obtained credit card accounts and lines of credit (*Id.* at ¶¶ 34-41) (**Counts 7, 8, 11, 12**). While each of these groups contain multiple separate unrelated schemes to defraud as well and thus, are improperly joined and create a risk of undue prejudice, they do at least have *some* commonalities such that the government chose to group them together. Thus, while dismissal is the appropriate remedy, the Defendant requests in the alternative that the Court sever any counts not dismissed, into the groups suggested by the government's indictment.

## III.     Conclusion

Wherefore, the Defendant, David Izsak, respectfully requests that this Court enter an order dismissing the indictment against him or in the alternative, severing the counts.

Respectfully submitted,

*/s/ Nishay K. Sanan*
nsanan@aol.com

Respectfully submitted,

*/s/ Cece White*
cece@sananlaw.com

Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111